IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DANIEL PATRICK CONNORS**, <br><br>   Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL**, <br> Commissioner of Social Security, <br><br>   Defendant. | Case No. 6:15-cv-2365-SI <br><br> **OPINION AND ORDER** |

Katherine L. Eitenmiller and Robert A. Baron, LAW OFFICE OF HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette, Suite 200 Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jordan D. Goddard, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Daniel P. Connors ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Because the

Commissioner's decision was based on the proper legal standards and is supported by substantial evidence, the decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's application

Plaintiff was born on May 14, 1963, in Portland, Oregon. Administrative Record ("AR") 29, 385. Plaintiff enlisted in the U.S. Army at 17 years old. AR 297. He served from 1981 to 1984. After that, he served with the National Guard from 1985 to 1995, and then returned to the Army from 1995 to 2002. *Id.* Plaintiff worked various jobs in the Army. After leaving the Army, Plaintiff worked as a wildlands firefighter in 2003 to 2004 and as a grocery clerk in 2003. AR 92-98, 208.

In March 2014, Plaintiff filed his application alleging disability as of January 1, 2003. AR 187-95. Plaintiff requested a hearing after the application was denied initially and again upon reconsideration. AR 135-45. After the hearing on May 5, 2015, Administrative Law Judge ("ALJ") John Michaelsen found Plaintiff not disabled. AR 35-56. Plaintiff appealed ALJ Michaelsen's decision to the Appeals Council and his appeal was denied review on October 26, 2015, making the ALJ's decision final. AR 1-6. This appeal followed.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's decision

The ALJ denied Plaintiff's claim for benefits using the sequential analysis. At step one, the ALJ noted that although Plaintiff might have engaged in substantial gainful activity in 2003 and 2004, the record was ambiguous, and so the ALJ concluded that Plaintiff had not engaged in substantial gainful activity during the period of January 1, 2003, the alleged disability onset date, through his date last insured of March 31, 2009. AR 19. At step two, the ALJ found the following severe impairments: history of alcohol abuse, major depressive disorder, post-traumatic stress disorder, Attention Deficit Hyperactive Disorder ("ADHD"), mild obesity, degenerative disc disease of the lumbar spine, osteoarthritis of the right shoulder, and history of left fifth digit abduction/adduction impairment. AR 19-20. At step three, the ALJ found that none of the severe impairments meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

PAGE 5 – OPINION AND ORDER

The ALJ next assessed Plaintiff's RFC, concluding that Plaintiff could perform work as follows:

> the full range of light work as defined in 20 CFR 404.1567(b) subject to the following limitations: The claimant is able to lift and/or carry ten pounds frequently and twenty pounds occasionally. He is able to stand and/or walk for two hours in an eight-hour workday with normal breaks. He is able to sit for six hours in an eight-hour workday with normal breaks. He is able to perform work limited to no more than frequent stooping, crouching, crawling, kneeling, or climbing of stairs and ramps. He should avoid climbing ropes, ladders or scaffolds. He is able to perform work limited to no more than occasional reaching with his right upper extremity, and to no more than frequent grasping, handling, or fingering with his left hand. He would also need to avoid concentrated exposure to fumes, dusts, gases, poor ventilation and other noxious odors. He is able to perform work limited to simple, repetitive, routine tasks requiring no more than occasional interaction with co-workers and the general public.

AR 22. At step five, the ALJ, with the testimony of a vocational expert ("VE"), determined that Plaintiff could not perform any past relevant work, but is able to perform the representative job of security guard. AR 29-30.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to provide legally sufficient reasons to disregard the Veteran's Administration ("VA") disability rating decisions, particularly the 2009 VA rating decision; (2) failing to provide clear and convincing reasons supported by substantial evidence to discredit Plaintiff's symptom testimony; and (3) failing to meet the Commissioner's burden of proving that Plaintiff retains the ability to perform the requirements of "other work."

### A. VA Disability Ratings

Plaintiff argues that the ALJ improperly discredited the VA disability ratings. A determination by another governmental agency about whether a claimant is disabled is based on that agency's rules and accordingly such determinations are not binding on the Commissioner.

20 C.F.R. § 404.1504. Nevertheless, an ALJ must "ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (reversing a denial of benefits because the ALJ "failed to consider the VA finding and did not mention it in his opinion"). Because the VA's and the Social Security Administration's ("SSA") criteria for determining disability are not identical, however, an ALJ may "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* Unlike the ALJ in *McCartey*, the ALJ here considered, but rejected, the VA's disability finding. Thus, the Court must decide whether the ALJ provided persuasive, specific, and valid reasons for rejecting the VA's disability finding.

The Court finds that the ALJ provided persuasive, specific, and valid reasons for crediting the VA rating decisions with minimal weight, rather than great weight. The ALJ found that the VA rating decisions should be discounted because of Plaintiff's work history and because the VA's decisions fail to describe any specific limitations attributed to Plaintiff's impairment.[1]

**1. Work History**

An ALJ may consider a claimant's work activity during the alleged period of disability, especially if the work ended for reasons unrelated to the alleged disability. *Bruton v. Massanari*, 268 F3d 824, 828 (9th Cir. 2001); *Daley v. Commissioner of the Soc. Sec. Admin.*, 2015 WL 1524485, at *8 (D. Or. 2015). In *Daley*, the court found the ALJ did not err when discrediting the claimant's VA rating decision, in part because the claimant worked during the VA disability period and was not fired for his disability. *Id.* at *8-9.

---

[1] The ALJ also discussed Plaintiff's daily living activities as a reason to discount the VA ratings, but the Court does not find this to be a specific and persuasive reason.

In this case, Plaintiff worked during the VA disability rating period. In 2004, the VA found Plaintiff was 80 percent disabled, effective retroactively to January 2003, due to a combination of mental impairments (70 percent) and physical impairments (10 percent back pain, among other non-severe pains). AR 62, 734, 736-45. The VA's diagnosis of Plaintiff's attention deficit disorder with depression and obsessive-compulsive behavior were the primary bases for the VA disability rating. AR 714, 726, 736). During the time that the VA rated him 80 percent disabled, however, Plaintiff worked two different jobs. In 2003, Plaintiff worked seasonally as a woodlands firefighter. AR 19, 205, 208. Also in 2003, Plaintiff worked for approximately four months as a grocery store clerk, but was fired for sexual harassment. AR 19, 67, 91-92, 205. In 2004, Plaintiff returned to work as a seasonal woodlands firefighter, but stopped working due to a previous back injury that worsened while performing the job. AR 67, 205. For neither job did Plaintiff have to stop working due to the impairments that were the primary underlying bases for the VA disability ratings.

Because of Plaintiff's worsened injuries, the VA increased the portion of Plaintiff's disability due to back pain from 10 percent to 20 percent. AR 726-35. This increase, made in 2006 but effective retroactively to 2005, resulted in the VA finding that Plaintiff was 100 percent unemployable. *Id.* The VA issued identical ratings (80 percent disabled and 100 percent unemployable) in 2007 and 2009. AR 706-25.[2]

---

[2] Plaintiff's argument that the ALJ committed plain error by only considering the VA's 2009 rating decision and not considering all the VA rating decisions is rejected. The ALJ held the record open in order to receive additional VA documents. After receiving some documents, the ALJ issued an opinion on July 13, 2015. Later that same day, the hearing office received even more VA documents from Plaintiff's counsel, well outside the time frame in which the record was left open. Despite the late submission of those records, the ALJ withdrew his original opinion and issued the amended opinion that Plaintiff challenges here, expressly noting that "[a]lthough these documents do not warrant a different outcome in this case, the undersigned has concluded that it would be remiss not to address those records in this decision."

PAGE 8 – OPINION AND ORDER

While rated 80 percent disabled by the VA, Plaintiff worked two jobs and was not fired because of his disability. Despite being determined to be 80 percent disabled effective January 2003, Plaintiff appears to have worked the entire woodlands firefighting season in 2003 without issue and worked four months as a grocery clerk without problems with his alleged disability. Moreover, Plaintiff only stopped working as a woodlands firefighter in 2004 because of increased back pain, not for reasons related to his purported compulsive behaviors. Plaintiff testified that he was able to control his mental health issues, the issues on which he was granted seven-eighths of his 80 percent disability rating, while working as a firefighter because he enjoyed being around the people he worked with. AR 23, 72. Additionally, the ALJ found that "it does not appear that the claimant was forced to stop working due to a medical impairment at his store clerk job." AR 24.

Plaintiff argues that his termination from his clerk job for sexual harassment is "consistent with a finding that compulsive and inappropriate behaviors—as reported to VA physicians—support a finding of disability." To support this argument, Plaintiff cites to instances in the record of his marijuana use, nicotine addiction, and two references to his masturbation activity. AR 298, 356, 358 (when asked what Plaintiff does for fun by himself, he answered "[m]asturbate"). The Court is not persuaded by Plaintiff's argument because there is no evidence that Plaintiff's mental impairments compelled him to sexually harass women and no medical professional has opined that sexual harassment was the result of Plaintiff's impairments or an expected result from at-home masturbation, marijuana use, or nicotine addiction. Thus, the Court concludes that Plaintiff stopped working both jobs for reasons unrelated to his mental

---

AR 16. Although the amended opinion specifically references the VA's 2009 decision in one sentence, from the text and context of the entire opinion it is clear that the ALJ considered all of the VA documents. For example, the ALJ discusses "[t]he VA rating *documents*." AR 24 (emphasis added).

impairments. The inconsistency of working while being 80 percent disabled ( according to the VA) is a persuasive, specific, and valid reason for discounting the VA's ratings decisions.

Plaintiff also alleges that the ALJ erred when considering Plaintiff's work history while receiving disability because the "VA rules regarding work activity while receiving benefits differs from those of the SSA." Plaintiff is correct about the difference between the two agencies' definitions, but it is not "merely an example of the ways in which these federal programs differ." *Compare* 38 C.F.R. § 4.17(a) (VA definition of total disability based on unemployability) *with* 20 C.F.R. § 416.905 (SSA definition of disability is "the inability to do any substantial gainful activity"). As the ALJ noted, "[b]ecause the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F3d at 1076; AR 24. Here, the ALJ identified how the two programs were not identical because the VA rating documents do not address the inconsistency in collecting benefits while working, and how that inconsistency is explained by looking at the different definitions from each agency. The ALJ then gave a persuasive, specific, and valid reason for giving the VA's rating decisions less weight, namely Plaintiff's work history, which demonstrated Plaintiff did not lose his jobs because of his mental impairments. The ALJ did not err.

### 2. Limitations

The ALJ's second reason to give limited weight to the VA decisions, because they have "no specific limitations [that] are attributed to the claimant's impairments (just a disability percentage)," is also a persuasive, specific, and valid reason. AR 24. Under the SSA regulations, a claimant's functional limitations must be compared to the claimant's past relevant work and to work existing in the national economy. 42 U.S.C. § 423(d)(2)(A) (2017). To award disability

benefits, the ALJ must evaluate "the most [the claimant] can still do despite [his] limitations." 20 C.F.R § 404.1545. Under the VA regulations, "accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition." 38 C.F.R § 4.1 (2017).

As the ALJ pointed out, the VA decisions do not include any of the required limitations of activity imposed by Plaintiff's disabling condition. AR 24. The VA concluded Plaintiff was unemployable based on his 80 percent disability rating, but failed to include the "limitation of activity imposed by the disabling condition." AR 726-35. An absence of specific limitations is a persuasive reason to discredit a VA rating decision because the ALJ must determine "the most [the claimant] can still do despite [his] limitations." Merely noting the disability percentage is not sufficient. *Daley*, 2015 WL 1524485, at *8 (finding that it is unclear how diabetes, which was rated 20 percent disabling, limited the plaintiff's ability to work when both the doctor and plaintiff reported his diabetes was controlled by exercise and diet alone).

Plaintiff argues that "it is notable that the VA has granted 100 percent unemployability and found Mr. Connors totally and totally [sic] and permanently disabled." The VA decisions, however, do not include any of the vocational information or functional limitations necessary to conclude that there is no work in the national economy that Plaintiff is capable of performing. Additionally, for the impairments that the VA did specifically identify, the ALJ has incorporated those impairments into the Plaintiff's RFC. AR 24 ("The [RFC] accounts for all the various impairments listed in the VA decision, and has apportioned specific functional limitations."). Those impairments include attention deficit disorder with major depression and obsessive compulsive disorder; discogenic disease of L4-5 and S1 with bilateral functional dermatone distribution to lower extremities; right shoulder rotator cuff weakness with degenerative arthritis

of the acromioclavicular and glenohumeral joints; left ankle mortise instability and crepitus; and tinnitus. AR 703-04.

An ALJ does not fail to give the VA's determination of disability proper weight when he includes the VA's determination into plaintiff's RFC. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (finding that the ALJ did not fail to give the VA's determination proper weight but instead incorporated it into plaintiff's RFC); *Axelson v. Berryhill,* 2017 WL 1788657, at *2 (D. Or. 2017). Thus, the ALJ did not fail to give the VA rating decisions proper weight. The ALJ incorporated the identified impairments into Plaintiff's RFC, and the VA rating decisions did not include any functional limitations that the ALJ could use for determining SSA disability.

## B. Plaintiff's Symptom Testimony

Plaintiff next argues that the ALJ improperly rejected Plaintiff's symptom testimony. There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting

PAGE 12 – OPINION AND ORDER

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Ortez v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence and individual's statements about the intensity, persistence, and limiting effects of symptoms statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those

statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the administrative hearing, Plaintiff testified that he was significantly limited by his obsessive-compulsive disorder, specifically the compulsion to choke himself. AR 71, 78, 82. He testified that when working as a grocery clerk in 2003, he would go into the freezer to choke himself hundreds of times a day and that he had spent most of his time between 2006 and 2014 at home, in the dark, choking himself. AR 72-73, 82. He also testified that at his grocery job, he would seek solitude where he could choke himself, but when firefighting, he did not because he enjoyed the people he was around. AR 72. Additionally, when Plaintiff had to leave the house during the period at issue, he testified that if he "ma[de] up [his] mind to get out and do something in the day or make a plan like today, [he]'ll self-medicate and won't have to [choke himself] for a little while." AR 80.

In his written decision, the ALJ considered Plaintiff's testimony following the two-step process articulated by the Ninth Circuit. AR 22-29; *Vasquez*, 572 F.3d at 591. The ALJ found Plaintiff's impairments could be expected to cause some of the alleged symptoms, but that Plaintiff's statements regarding his symptoms are not fully consistent with, or corroborated by, the evidence in the record.

1. **Onset Date**

As a first reason for discounting Plaintiff's symptom testimony, the ALJ noted that "there is nothing of significance around the claimant's alleged disability onset date that would indicate a worsening of symptoms, illness, or injury." AR 23. An onset date must be supported by substantial evidence, and an ALJ should not question whether another date could have reasonably been chosen. *Dunn v. Sullivan*, 1992 WL 92728, at *3 (9th Cir.); *see also Swanson v. Sec'y of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985). The court in *Dunn* found that "an onset date is, of necessity, somewhat arbitrary; that will always be the case where the statute requires line-drawing but where a claimant's condition was gradually worsening." 1992 WL 92728 at *3 (quotations omitted). At the hearing, Plaintiff explained he picked his January 2003 onset date, because that was the day the VA rated him 80 percent disabled. AR 66. There is substantial evidence to support Plaintiff's onset date and that Plaintiff struggled with a gradually worsening condition. AR 84 (Plaintiff explained he has been choking himself since 1984), 292 (Plaintiff has been diagnosed with ADHD since second grade), 301 (when describing his self-choking, "it's getting worse and worse all the time"). Plaintiff's choice of onset date is not a clear and convincing reason for rejecting Plaintiff's symptom testimony.

2. **Daily Living Activities**

As a second reason for discounting Plaintiff's symptom testimony, the ALJ found that Plaintiff's "statements regarding his activities of daily living and his statements during the period at issue showing relatively good functioning lessen the credibility of his limitation allegations." AR 28. An ALJ may discount a claimant's testimony if it is inconsistent with the claimant's daily activities. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The ALJ noted that in 2015, at the time of the hearing, Plaintiff reported "very limited activities, including performing his own laundry tasks, driving, and grocery shopping, and denied providing care for

PAGE 15 – OPINION AND ORDER

his daughter." AR 27, 75, 78, 80. The ALJ also noted that in 2006, however, Plaintiff reported to an examiner his ability to

> wake up every day at six a.m., perform personal care and his 'morning routine' independently, care for his daughter and get her off to school, watch television until noon and smoke marijuana with friends, pick up his child from school, prepare dinner, eat with his family, watch television and smoke more marijuana,

AR 24. The fact that in 2006 Plaintiff could groom himself, take his daughter to and from school, and watch television is not inconsistent with the limitations Plaintiff alleges are caused by his self-choking. Additionally, Plaintiff's statements regarding his daily living activities in 2006, versus his hearing testimony in 2015, are not inconsistent, particularly in light of the fact that Plaintiff suffers from a combination of conditions that have been worsening, and the purported inconsistencies is not a clear and convincing reason to reject his symptom testimony.[3]

### 3. Inconsistencies and Lack of Record Evidence

Although the reasons discussed above are not clear and convincing, the ALJ did provide reasons that meet the required standard. The ALJ found that Plaintiff's subjective testimony regarding his self-choking behavior is not supported by the record. AR 26. Plaintiff alleges that he cannot work because he chokes himself "hundreds" of times a day. AR 72. The ALJ noted, however, several exceptions to that behavior. AR 23, 27. While it is not sufficient for the ALJ to "make only general findings," he did state what symptom testimony was not credible and "what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918; *cf. Brown-Hunter v.*

---

[3] The ALJ discussed additional reasons for discrediting Plaintiff's symptom testimony, including his marijuana consumption (AR 23, 26-27), his back pain and gait (AR 25), the care of his daughter (AR 23, 27), the fact that an examiner noted Plaintiff's "attention and concentration were in the normal range" despite his reported ADHD since second grade (AR 26), his evasive answers to job history (AR 27), and the psychological results on the Minnesota Multiphasic Personality Inventory suggesting his "over-endorsement" of distressing items (AR 27). The Court finds none of these reasons rise to the level of clear and convincing.

*Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding legal error because the ALJ failed to identify the testimony she found not credible and did not link that testimony to the particular parts of the record). For example, the ALJ noted that Plaintiff testified he never engaged in self-choking when he was working full-time as a firefighter in 2003 and 2004 because "there were always people around" and he "enjoyed the people being around." AR 23, 72. In 2005, he took a three-week vacation to Jamaica and reported he did not choke himself for the entirety of the trip, with only one exception. AR 27, 302, 304; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (finding Plaintiff's extended trip to Venezuela allowed the ALJ to "properly infer from this fact that [Plaintiff] was not as physically limited as he purported to be.). Additionally, when doing volunteer work in 2005, Plaintiff's self-choking behavior also decreased. AR 305. Plaintiff also admitted to an examining psychologist that boredom is "the major factor in his OCD like [self-choking] behavior." AR 304; *see also* AR 27, 302, 304. The ALJ did not err in finding that Plaintiff's subjective testimony regarding the severity and limiting effects of his self-choking behavior is not supported by the record. Thus, the ALJ gave a clear and convincing reason for discounting Plaintiff's symptom testimony.

  4. **Work History**

The ALJ also relied on Plaintiff's work history to discount Plaintiff's testimony about his limitations. AR 22-23. An ALJ can consider work history for weighing a plaintiff's symptom testimony when an alleged impairment is not the reason the plaintiff stopped working. *Bruton*, 268 F.3d at 828 (9th Cir. 2001) (finding a plaintiff's pain complaints not credible because he stopped working because he was laid off, not because he was injured); *see also Tommasetti*, 533 F.3d at 1040 (noting a plaintiff's severe diabetes was not the reason he stopped working). Plaintiff alleges that he could not work prior to his date last insured due to mental health issues, but as the ALJ pointed out, Plaintiff was fired from his grocery job for sexual

harassment. AR 22-23. As discussed above, the Court rejects Plaintiff's argument that his sexual harassment was caused by his mental impairments.

Plaintiff also testified that he has never worked at a job more than six months because of his self-choking, but as the ALJ noted, Plaintiff testified that he never engaged in that behavior while at his firefighting job because he enjoyed his co-workers. AR 23. Additionally, Plaintiff's employment was not terminated at his grocery clerk job because of Plaintiff's self-choking behavior. Thus, Plaintiff's work history was a second clear and convincing reason to discount Plaintiff's testimony.

Although some of the reasons given by the ALJ to discount Plaintiff's testimony are legally insufficient, an ALJ's decision to discount the limitations testified to by a claimant may be sustained even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. Accordingly, the ALJ's assessment of Plaintiff's subjective symptom testimony is upheld.

## C. Plaintiff's Ability to Perform "other work"

Plaintiff alleges that the Commissioner failed to meet her burden of proving that Plaintiff retains the ability to perform the requirements of "other work," specifically, the security guard job. Plaintiff argues that when his subjective symptom testimony is fully credited, then the record indicates he would be unable to perform a security guard job because his self-choking behavior would require him to leave the workstation frequently. To meet the Commissioner's burden, the hypothetical posed to the VE must consider all of the claimant's limitations supported by the record. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 886 (9th Cir. 2005). The hypothetical posed to the VE was stated as follows:

> So, Mr. McGowan, if you would, please assume an
> individual with the same age, education, work experience as
> the claimant who is limited to light work, but who is

PAGE 18 – OPINION AND ORDER

>                     further limited to no more than frequent stooping,
>                     crouching, crawling, kneeling or climbing of stairs and
>                     ramps. This individual would need to avoid climbing ropes,
>                     ladders and scaffolds. He is limited to no more than
>                     occasional reaching with his right upper extremity, and to
>                     no more than frequent grasping, handling or fingering with his left
>                     hand.
>
>                     * * * *
>
>                     Please assume that this individual would also need
>                     to avoid concentrated exposure to fumes, dusts, gases, poor
>                     ventilation and other obnoxious odors. And, please also
>                     assume that he would be limited to simple, repetitive,
>                     routine tasks requiring no more than occasional interaction
>                     with co-workers and the general public.

AR 98-99. The ALJ included all of the identified impairments from the VA documents, specifically Plaintiff's attention deficit disorder with major depression and obsessive compulsive disorder, lower back impairment, right shoulder rotator cuff weakness, tinnitus, moderate limited motion in left ankle, and left fifth finger impairment. AR 714-45. Additionally, "no treating physician opined that the claimant has greater limitations during the period at issue than those accounted for in [the hypothetical]." AR 28. Moreover, the Court has found that the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony. Accordingly, the Commissioner did not fail to meet her burden and the hypothetical posed to the VE took into account all of Plaintiff's impairments that were supported by the record.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the Court AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED**.

DATED this 6th day of July, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge